UNITED STATES DISTRICT COURT
DISTRICT OF N EW JERSEY



CLERK
U.S. DISTRICT COURT
DISTRICT OF NEW JERSEY
RECEIVED

2017 NOV 17 A 11: 25

ROBERT DOYLE,                              CASE NO.:

    Plaintiff,

vs.

SOUTHWEST AIRLINES, INC.,

    Defendant.

_____/

## CLASS ACTION COMPLAINT

## PLAINTIFF DEMANDS TRIAL BY JURY

### INTRODUCTORY STATEMENT

This is a civil action seeking money damages in excess of Five Million Dollars ($5,000,000.00), exclusive of costs, interest, and attorney's fees against **SOUTHWEST AIRLINES, INC.**.

### JURISDICTION AND VENUE

1.    This action is brought pursuant to 28 U.S. Code § 1331; 28 U.S. Code § 1332 (d)(2); and Rule 23 of the Federal Rules of Civil Procedure (F.R.C.P.).

2.    The United States District for the Southern District of New Jersey has jurisdiction of this action under 28 U.S.C. §§ 1390 and 1391.

3.    The Plaintiff further invokes the supplemental jurisdiction of the United States District Court to hear pendant State claims arising under State laws pursuant to 28 U.S.C. § 1367(a). All relevant events occurred in Broward County, Florida, but Plaintiff now lives in Morris County, New Jersey.

4.      Defendant does a considerable amount of business in the State of New Jersey, but the individual causes of action bringing rise to this suit did not occur among residents of New Jersey, nor any other state, in an amount in between 33.33% and 66.67%.

## PARTIES

5.      The Plaintiff, Robert Doyle, is currently a resident of Morris County, New Jersey, and was a resident of Broward County, Florida, during the rise of his particular causes of action.

6.      Doyle is an attorney licensed to practice law in the State of New York.

7.      The Defendant, Southwest Airlines ("Southwest") is a retail airline company incorporated under the laws of, and headquartered in the State of Texas.

8.      Southwest does business in almost every single state and in a few foreign countries.

9.      The address of Southwest is 2702 Love Field, Dallas, Texas, 75235.

## STATEMENT OF FACTS

10.      On October 31, 2013, Doyle purchased a round trip ticket on Southwest to depart from Fort Lauderdale and arrive in Long Island, New York, on November 19, 2013; and return from Long Island, New York, to Fort Lauderdale, Florida, on December 16, 2013 (the "Tickets").

11.      Doyle purchased the Tickets under one confirmation number: ZFIFA6.

12.      Doyle was at that time a member of Southwest's frequent flyer club and sometimes received emails from Southwest.

13.      At the time of the purchase of the Tickets it was Southwest's policy to allow ticket holders to reuse the complete value of unused tickets towards the purchase of other tickets for one year subsequent to the travel date of the unused tickets.

14.      Doyle on several previous occasions used unused Southwest tickets towards the purchase of other tickets on Southwest.

15.    Doyle missed the November 19th flight.

16.    Doyle did not check in for the November 19th flight.

17.    With regard to many previous reservations made by Doyle with Southwest, failure to check in for a Southwest flight was an adequate means of informing Southwest of Doyle's intention not to board said flights, but Doyle was still allowed to reuse the entire purchase price of the unused tickets toward subsequent flights.

18.    Doyle considered his failure to check in for the November 19th flight as informing Southwest that he intended not to fly on that flight, as he had done many times in the past. On every such occasion, Doyle was allowed by Southwest to reuse the full purchase price of the unused ticket toward the purchase price of subsequent tickets.

19.    On November 20, 2013, Doyle tried to use the value of the Flights towards subsequent flights on Southwest, but was unable to do so on the internet.

20.    At that time, Doyle contacted Southwest by phone (the "Phone Call") and was told that Southwest had just instituted a new policy that if anyone failed to make a flight, that person had to inform Southwest of that fact ten minutes prior to the departure time of that flight (the "New Policy").

21.    This was the first time that Doyle heard of the New Policy.

22.    During the Phone Call, Doyle was informed that not only was the price of the November19th flight forfeited to Southwest but so was the price of the December 16th flight as a punishment for failing to inform Southwest ten minutes prior to the departure of the November 19th flight of Doyle's failure to make the November 19th flight.

23.    During the Phone Call, Doyle was told that any flights that had been made on the same confirmation would have been forfeited as a punishment for missing any one flight without ten

minutes' notice. In other words, as explained by the Southwest employee: if a person purchased a ticket with ten different legs, missing any one leg of the flight without ten minutes' notice, even if the person did not check in, would cause the purchase price of the other nine legs to be forfeited to Southwest as a punishment.

24.     Southwest never made any attempt to inform Doyle, nor anyone else, of the alleged New Policy, prior to the Phone Call.

25.     Southwest never emailed information of the alleged New Policy to Doyle, even though Doyle was a member of Southwest's frequent flyer program and received many emails from Southwest.

26.     Because Southwest failed to inform any ticket purchasers of the alleged New Policy, and, in fact, hid, the alleged New Policy from ticket purchasers, at the time of Doyle's October 31 ticket purchase, the alleged New Policy was not actually in effect at that time.

27.     Southwest had so many complaints about the New Policy that it had to institute a new department just to deal with all the complaints from customers who did not know about the alleged New Policy.

28.     Some years after October 31, 2013, Southwest added a notice about the 10 minute policy to its full website, but as of the present day it still has no notice on its mobile website.

## CLASS ACTION ALLEGATIONS

29.     Plaintiff brings this class action on behalf of himself and all others similarly situated (the "Class" or "Class Member(s)").

30.     Plaintiff represents, and is a member of, the Class, consisting of:

> all people who had airline ticket purchase money seized from them by Southwest for failure to notify Southwest of their failure to make a flight in violation of the alleged New Policy.

Additionally, there might be a sub-class consisting of:

all people who purchased tickets on Southwest's mobile website who had airline ticket purchase money seized from them by Southwest for failure to notify Southwest of their failure to make a flight in violation of the alleged New Policy.

31.     Defendants and their employees and agents are excluded from the Class.

32.     Plaintiff does not know the number of members of the Class but believes the number of Class members to be in the tens or hundreds of thousands.

33.     Thus, this matter should be certified as a class action to assist in the expeditious litigation of this matter.

34.     Plaintiff and Class members were harmed by the acts of the Defendant by having their airline ticket purchase money seized by Southwest as a punishment in violation of both law and equity.

35.     This suit seeks only damages and injunctive relief for recovery of economic injury on behalf of the Class, and it expressly is not intended to request any recovery for personal injury and claims related thereto. Plaintiff reserves the right to expand the Class definition to seek recovery on behalf of additional people as warranted as facts are learned in further investigation and discovery.

36.     The joinder of the Class members is impractical and the disposition of their claims in the Class action will provide substantial benefits both to the parties and to the court.

37.     The Class can be identified through the records of the Defendant.

38.     There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented.

39.     The questions of law and fact to the Class predominate over questions which might affect individual Class members, including the following:

40.     How many tickets, within the six years prior to the filing of this Complaint, Defendant confiscated in violation of law and equity.

41.     Whether Plaintiff and the Class members were damaged thereby, and the extent of damages for such violations; and

42.     Whether Defendant should be enjoined from engaging in such conduct in the future.

43.     As a person who had his tickets confiscated by Defendant, in violation of law and equity, Plaintiff is asserting claims common to the members of the Class.

44.     Plaintiff will fairly and adequately represent and protect the interests of the Class in that Plaintiff has no interests antagonistic to any member of the Class.

45.     Plaintiff and the members of the Class have all suffered irreparable harm as a result of the Defendants' unlawful, inequitable, and wrongful conduct.

46.     Absent a class action, the Class will continue to face the potential for irreparable harm.

47.     Additionally, these violations of law will be allowed to proceed without remedy and Defendant will likely continue such illegal conduct.

48.     Because of the size of the individual Class member's claims, few, if any, Class members could afford to seek legal redress for the wrongs complained of herein.

49.     Plaintiff will retain counsel experienced in handling class action and contract claims

50.     A class action is a superior method for the fair and efficient adjudication of this controversy. Class-wide damages are essential to induce Defendant to comply with federal and state law, and to cease stealing money from the Class members.

51.     The interest of Class members in individually controlling the prosecution of separate claims against Defendant is small because the average individual claim is only likely to be a few hundred dollars.

52.     Management of these claims is likely to present significantly fewer difficulties than those presented in many class claims.

53.     Defendant has acted on grounds generally applicable to the Class, making relief in connection with the Class as a whole appropriate.

54.     Defendant made, and makes a contract with any member of the public when any member of the public purchases a ticket for passage on a Southwest airplane.

55.     As such, Plaintiff and each Class member contracted with Defendant when they purchased tickets for passage on Southwest.

56.     Such contracts are express as is commonly understood by members of the public, Defendant, and common business practices.

57.     Upon information and belief, the aggregate amount of the claims exceeds $5,000,000.

## COUNT I
## BREACH OF CONTRACT

58.     Plaintiff re-alleges and adopts, as if fully set forth herein, all preceding allegations in this Complaint.

59.     Defendant breached its contracts with Plaintiff and each member of the Class when it refused to allow Plaintiff and each Class member to use the dollar value of their unused tickets towards subsequent attempted or actual purchases on Southwest.

WHEREFORE, Plaintiff pray for:

a) Judgment for compensatory damages in the amount of actual damages to the Class members, which Plaintiff believe are in excess of $5,000,000.00;
b) Judgment for exemplary damages;
c) Costs of suit;
d) Reasonable attorney's fees;
e) Trial by jury as to all issues so triable; and
f) Such other relief as this Honorable Court may deem just and appropriate.

## COUNT II
## UNJUST ENRICHMENT

60.     Plaintiff re-alleges and adopts, as if fully set forth herein, all preceding allegations in this Complaint.

61.     Defendant was unjustly enriched by confiscating not only the purchase price of tickets relating to the flights missed by the Class members, but also because Defendant confiscated purchase money of each subsequent flight of each trip that each Class member missed without giving Southwest ten minutes' notice.

62.     In other words, if a person bought a ticket with 1 flight and missed that flight without giving Southwest ten minutes' notice, that person's purchase money was confiscated by Southwest. If a person bought a ticket with 2 flights and missed the first flight without giving Southwest ten minutes' notice, that person's purchase price for the first flight and the second flight was confiscated by Southwest (thus if such person found another way to his first destination of a missed flight, he would not be allowed to board the plane for the second flight of his ticket, nor use the purchase price toward a subsequent flight). If a person bought a ticket with 3 flights and missed the first flight without giving Southwest ten minutes' notice, that person's purchase price for the first flight, the second flight, and the third flight, was confiscated by Southwest (thus if such person found another way to his first or second destinations, he would not be allowed to board the plane for the second nor third flights of his ticket, nor use the purchase price toward subsequent flights). If a person bought a ticket with 4 or more flights and missed the first flight without giving Southwest ten minutes' notice, that person's purchase price for the first flight, the second flight, the third flight, and the fourth flight was confiscated by Southwest, and the purchaser would not be allowed to board any of the four flights.

63.     By further example, if a person bought a ticket with ten flights and, for instance, missed the fifth flight, the purchase price for the fifth through tenth flights would be (and was) confiscated, and the person would not be allowed to board the plane for any of those flights, nor use the purchase price money toward subsequent flights.

64.     If, however, a person bought ten separate flights with ten separate confirmation numbers, the aforementioned confiscation would not occur.

65.     Several Southwest employees told Doyle, in both the Phone Call and subsequent phone calls, that Southwest's New Policy was intended as a punishment.

66.     However, each confiscation, especially confiscations of subsequent flights that would not have been missed, represents an improper windfall and unjust enrichment to Southwest.

WHEREFORE, Plaintiff prays for:

   a) Judgment for compensatory damages in the amount of actual damages to the Class members, which Plaintiff believes are in excess of $5,000,000.00;
   b) Judgment for exemplary damages;
   c) Costs of suit;
   d) Reasonable attorney's fees;
   e) Trial by jury as to all issues so triable; and
   f) Such other relief as this Honorable Court may deem just and appropriate.

## COUNT III
## FRAUD IN THE INDUCEMENT

67.     Plaintiff re-alleges and adopts, as if fully set forth herein, all preceding allegations in this Complaint

68.     Plaintiff's, and each Class Member's, willingness to assent to the terms of the contract for the Tickets was cause by material fraudulent misrepresentation of Defendant about the need for ticket holders to give ten minutes' notice if they miss a flight.

69.     Plaintiff and each Class Member was damaged by Defendant's actions.

70. Defendant's actions were malicious, fraudulent, and reckless, and committed with wanton disregard to the rights of the Plaintiff and each Class Member.

WHEREFORE, Plaintiff prays for:

a) Judgment for compensatory damages in the amount of actual damages to the Class members, which Plaintiff believes are in excess of $5,000,000.00;

b) Judgment for exemplary damages;

c) Costs of suit;

d) Reasonable attorney's fees;

e) Trial by jury as to all issues so triable; and

f) Such other relief as this Honorable Court may deem just and appropriate.


WHEREFORE, Plaintiff PRAYS:

a) Judgment for compensatory damages in law and equity in the amount of actual damages

to the Class members, which Plaintiff believes are in excess of 5,000,000.00;

b) Judgment for exemplary damages;

c) Costs of suit;

d) Trial by jury as to all issues so triable; and

e) Such other and further relief as this Honorable Court deems just, appropriate, and equitable.


Dated: November 16, 2017

Respectfully submitted,

Robert Doyle, Esq., *Pro Se*
26 Netcong Heights, Apt. #9
Netcong, NJ 07857
(646) 434-7539